UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
BRYDGE TECHNOLOGIES LLC, *et al*.,

                    Plaintiffs,

        -against-

OGADGET LLC,

                    Defendant.
---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19 CV 5692 (EK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On October 8, 2019, plaintiffs Brydge Technologies LLC ("Brydge Technologies") and

Brydge Global PTE LTD ("Brydge Global") (together with Brydge Technologies, "plaintiffs")

commenced this action against defendants Kickstarter PBC and OGadget LLC ("defendants"),

seeking damages for their alleged infringement of Brydge Global's U.S. Patent No. 9,069,527

(the "Patent" or the "'527 Patent").  (Pls.' Mem. at 1[1]; Compl.[2]).

Despite proper service, defendant OGadget failed to file an answer or otherwise respond

to the Complaint.[3]  Accordingly, plaintiffs moved for entry of default on January 22, 2020, and

on January 29, 2020, the Clerk of Court entered a default against defendant.  Plaintiffs moved for

default judgment against defendant OGadget on April 15, 2020, and on April 16, 2020, the

Honorable Eric Komitee referred this matter to the undersigned to issue a Report and

Recommendation.

For the following reasons, this Court respectfully recommends that plaintiffs' motion for

---

[1] Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Entry of Default Judgment and Permanent Injunction Against Defendant OGadget, filed April 15, 2020, ECF No. 25-2.

[2] Citations to "Compl." refer to the Complaint, filed on October 8, 2019, ECF No. 1.

[3] Defendant Kickstarter was voluntarily dismissed from the case on March 11, 2020.  (See ECF No. 22).

default judgment be granted and a permanent injunction be entered.

FACTUAL BACKGROUND

According to the Complaint, plaintiff Brydge Technologies is a limited liability company, organized under the laws of the State of Utah, with its principal place of business located at 1912 Sidewinder Dr., Ste 104, Park City, Utah 84060.  (Compl. ¶ 3).  Plaintiff Brydge Global is a Singapore corporation, with its registered office located at 200 Jalan Sultan, #03-11, Singapore 199018.  (Id. ¶ 4).  According to plaintiffs, defendant Kickstarter is a Delaware corporation with its principal place of business located at 58 Kent Street, Brooklyn, New York 11222, and defendant OGadget is a limited liability company, existing under the laws of California, with its principal place of business located at 340 S Lemon Ave., Walnut, California 91789.  (Id. ¶¶ 5-6).

Plaintiffs allege that Bradley Train Leong and Edward Guillaume Helene Vromen (the "inventors") developed a keyboard designed to connect to tablet-style hand-held computers.  (Id.) On July 22, 2012, the inventors filed a provisional patent application (id. ¶ 10), and on October 22, 2012, they filed their utility patent application, describing the ways in which their support apparatus was an improvement in display and functionality.  (Id. ¶ 13).  On June 30, 2015, the United States Patent and Trademark Office ("USPTO") issued Patent No. 9,069,527. (Id.)  The Patent included an apparatus for supporting a device, including a keyboard, frame and a device receiving member connected to the frame, which was designed to connect to the iPad.  (Id. ¶ 9).

Although the Patent appears to be assigned to Brydge LLC (Compl., Ex. F (ECF No. 1-10)), plaintiffs allege that Brydge Global is the owner – by assignment – of all right, title and interest in and to U.S. Patent No. 9,069,527.  (Compl. ¶ 32).

Plaintiffs also allege that defendant Kickstarter operates a website at kickstarter.com, where it claims to "support[] projects from a variety of categories:  Art, Comics, Crafts, Dance,

Design, Fashion, Film & Video, Food, Games, Journalism, Music, Photography, Publishing, Technology, and Theater." (Id. ¶ 18). Kickstarter has guidelines which prohibit certain items including "[p]rojects that share things that already exist, or repackage a previously-created product, without adding anything new or aiming to iterate on the idea in any way." (Id. ¶ 19, Ex. D).

According to the Complaint, OGadget developed a product, "which is a copy of Brydge Technologies' product," and offered it for sale on defendant Kickstarter's website. (Id. ¶ 15). (See URL https://www.kickstarter.com/projects/librakeyboard/libra-turns-your-ipad-pro-into-a-macbook ("Kickstarter's Libra Project"); Compl., Ex. A)).

On September 20, 2019, plaintiffs sent a cease and desist letter to OGadget by email and U.S. mail. (Compl. ¶ 16, Ex. B). Kickstarter was also sent a notice for infringement of the Patent by U.S. mail and electronic mail on that same day. (Compl. ¶ 17, Ex. C). According to the Complaint, plaintiffs believe that OGadget ceased offering its product on the OGadget website after receipt of the cease and desist letter, but did not take any action to cease the sale of the product from the Kickstarter Libra Project. (Id.)

Plaintiffs allege that the OGadget product offered for sale on Kickstarter's website is a copy of Brydge's product, as evidenced by a side-by-side comparison of the two.[4] (Id. ¶¶ 20, 21-29, Ex. E). Plaintiffs further allege that the activities of defendants have injured and threaten future injury to Brydge, diminishing Brydge's goodwill and causing Brydge to lose sales that it otherwise would have made but for defendants' infringement. (Id. ¶ 30). Accordingly, in their Complaint, plaintiffs allege one claim for relief based on defendants' infringement of Patent No.

---

[4] Plaintiffs allege that not only does OGadget's product infringe on plaintiffs' '527 Patent, but it violates Kickstarter's own Guidelines by repackaging a copy of Brydge's previously created product. (Compl. ¶ 19).

9,069,527, in violation of 35 U.S.C. § 271, and seek a temporary and permanent injunction, as well as treble damages and interest.[5]

PROCEDURAL HISTORY

According to plaintiffs, service was attempted on OGadget's designated agent for service of process, but without success.  (Pls.' Mem. at 3).  On December 5, 2019, this Court granted plaintiffs' motion to effect substitute service through the California Secretary of State, which plaintiffs served on December 13, 2019.  (Id. at 3, ECF No. 15).  Although OGadget's responsive pleading was due on January 10, 2020, defendant failed to answer or otherwise move with respect to the Complaint.  (Id.)  The Clerk of Court entered the default against OGadget on January 29, 2020.  On February 3, 2020, plaintiffs Brydge Technologies and Brydge Global voluntarily dismissed their claims against defendant Kickstarter in this action.  (See ECF No. 22).  On April 15, 2020, plaintiffs filed this motion for default judgment and a permanent injunction against defendant OGadget LLC.

For the reasons set forth below, it is respectfully recommended that plaintiffs' motion be granted.

DISCUSSION

A.  Default Judgment

1.  Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on

---

[5] Although plaintiffs initially requested damages and attorneys' fees in their Complaint, the Motion for Default Judgment requests only injunctive relief.  (Pls.' Mem. at 19).

4

the Clerk's record of the case.  See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  Here, the Clerk of the Court entered a default against defendants on January 29, 2020.  To date, defendants have not moved to vacate the default judgement.

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, the plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established;

(2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

    2.  Entry of Default Judgment

        a. Claims for Patent Infringement

Plaintiffs allege a violation of 35 U.S.C. § 271, which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  As such, liability for patent infringement is established when a defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent."  35 U.S.C. § 271; see, e.g., IPVX Patent Holdings, Inc. v. Taridium, LLC, No. 12 CV 5251, 2014 WL 4437294, at *2 (E.D.N.Y. Aug. 6, 2014), report and recommendation adopted, 2014 WL 4437307 (E.D.N.Y. Sept. 9, 2014).  Indeed, Section 271(a) requires a pleading to: "(i) allege

ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked.'" American Infertility of New York, P.C. v. Deep Blue Health New Zealand Ltd., No. 17 CV 5666, 2019 WL 10786023, at *6 (S.D.N.Y. Dec. 30, 2019), report and recommendation adopted, 2020 WL 4218261 (S.D.N.Y. July 23, 2020) (citing Bobcar Media, LLC v. Aardvark Event Logistics, Inc., 2017 WL 74729, at *3 (S.D.N.Y. Jan. 4, 2017); see also Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1362 (Fed. Cir. 2013).

Here, accepting plaintiffs' allegations as true, plaintiffs have demonstrated ownership of the '527 patent by alleging that "Brydge Global has exclusive ownership interest of the '527 Patent *by assignment*, including the exclusive right to enforce the '527 Patent, and continues to hold that ownership interest in the '527 Patent." (Compl. ¶ 32 (emphasis added)).[6]  In addition, the Complaint identifies the '527 Patent as the one that is allegedly being infringed by defendant's product (id. ¶ 33), and names the defendant which has allegedly engaged in the infringing conduct (id. ¶¶ 33, 36), satisfying the first three elements of the Hall test.

As for the means by which plaintiffs allege the OGadget Libra keyboard infringes upon Brydge's '527 Patent, plaintiffs contend that a side-by-side comparison of the two keyboards demonstrates that the OGadget Libra keyboard is virtually identical to the Brydge keyboard. (Yorio Decl. ¶ 3; see also Mander-Jones Decl.[7] ¶ 6).  Toby Mander-Jones, co-CEO of Brydge,

---

[6] Plaintiffs have attached to the Complaint a copy of the '527 Patent, which names Brydge LLC as the applicant and the assignee.  (Compl., Ex. F).  Although plaintiffs have not explained the relationship between Brydge LLC and Brydge Global, or detailed how the Patent came to be assigned to Brydge Global, on a motion for default judgment, the Court accepts all allegations as true and recommends the court find plaintiffs' allegation that Brydge Global has "exclusive ownership interest of the '527 Patent by assignment," and continues to hold that ownership interest, including the "exclusive right to enforce the '527 Patent," sufficient to satisfy the first element of the test demonstrating ownership here.

[7] Citations to "Mander-Jones Decl." refer to the Declaration of Toby Mander-Jones in

states that he has reviewed the OGadget Libra keyboard and determined that the Libra keyboard

infringes on claims 1, 2, 3, 4, 6, 7, 11, 13, 14, 15, 16, and 17 of the '527 Patent.  (Mander-Jones

Decl. ¶ 7).  Moreover, in their Complaint, plaintiffs allege that the OGadget product offered for

sale on Kickstarter's website is a copy of Brydge's product, as evidenced by a side-by-side

comparison of the two, and that the activities of defendants have injured and threaten future

injury to Brydge, diminishing Brydge's goodwill and causing Brydge to lose sales that it

otherwise would have made but for defendants' infringement.  (Compl. ¶¶ 20, 21-29, 30).

   Based on plaintiffs' allegations of ownership of the '527 Patent, and their claim that

OGadget offered a virtually identical keyboard for sale, plaintiffs have successfully alleged a

violation of 35 U.S.C § 271.  These allegations, which have not been challenged by OGadget and

must be taken as true in light of defendant's default, establish OGadget's liability as a matter of

law.  See Kaneka Corp. v. Purestar Chem Enter. Co., No. 16 CV 4861, 2018 WL 3215680, at *3-

5 (E.D.N.Y. May 1, 2018), report and recommendation adopted, 2018 WL 3213281 (E.D.N.Y.

June 29, 2018); Kiss Nail Products, Inc. v. Shenzhen Jinri Elec. Appliance Co., No. 18 CV 5625,

2020 WL 4679631, at *6 (E.D.N.Y. July 23, 2020), report and recommendation adopted, 2020

WL 4676415 (E.D.N.Y. Aug. 12, 2020).

   b. Default Judgment Factors

   Having concluded that there is a basis for finding liability on the part of OGadget, the

Court must consider whether, under the circumstances, entry of a default judgment is

appropriate.  Kaneka Corp. v. Purestar Chem Enter. Co., 2018 WL 3215680, at *3-5.

   "When a defendant is continually and 'entirely unresponsive,' [its] failure to respond is

considered willful."  See S.E.C. v. McNulty, 137 F.3d 732, 738-39 (2d Cir. 1998) (unexplained

---

Support of Motion for Default Judgment, dated April 15, 2020, ECF No. 25-3.

failure to respond to complaint indicates willfulness).  After numerous attempts to serve defendant OGadget through its designated agent, the Court granted plaintiffs' motion to serve defendant by alternative means.  (Pls.' Mem. at 3; see ECF No. 12).  However, defendant still did not answer or otherwise respond to the Complaint and did not seek an extension of time to respond.  Since "the fact of a defendant's default is often treated as sufficient to establish that the infringement was willful," Kiss Nail Products, Inc. v. Shenzhen Jinri Elec. Appliance Co., 2020 WL 4679631, at *6, the Court concludes that "[t]here is no indication that [d]efendant's failure to respond to the Complaint, despite being properly served, was anything but deliberate," and therefore willful.  Litkofsky v. P & L Acquisitions, LLC, No. 15 CV 5429, 2016 WL 7167955, at *3 (E.D.N.Y. Aug. 19, 2016), report and recommendation adopted, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016).

Finally, a denial of the motion would be prejudicial to plaintiffs because there is no other method by which they can obtain relief from the Court.  Id.  Thus, the Court respectfully recommends that a default judgment would be appropriate.

B.  Relief Sought

In their motion for default judgment, plaintiffs seek an Order enjoining defendant OGadget and its affiliate Gadget Labs Group LLC, together with their respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from directly or indirectly "[e]ngaging in any and all acts of infringement of the U.S. Patent No. 9,069,527, including making, using, importing, selling, offering for sale, advertising, marketing, or promoting the sale of any keyboard for use with Apple iPad or Apple iPad Pro 2 devices incorporating U.S. Patent No. 9,069,527, or any substantially similar keyboard sold, advertised, marketed or promoted in the United States"; "[a]ssisting or cooperating with anyone else who infringes either directly or indirectly U.S. Patent No. 9,069,527"; "[u]sing any photographs

and/or images on Gadget Companies websites, or on Kickstarter or Indiegogo or any other crowdfunding site, or in any advertising, packaging, and any marketing materials that describe, explain, show, demonstrate, or illustrate the function of any product in a manner that suggests, induces, infers, or indicates use that constitutes an infringement of U.S. Patent No. 9,069,527"; and "[u]sing any statements and images on any website, including but not limited to the www. website, and any advertising, packaging, and any marketing materials that describe, explain, show, demonstrate, or illustrate the function of any product in a manner that suggests, induces, infers, or indicates use or methods of use that constitutes an infringement of U.S. Patent No. 9,069,527, including but not limited to, the marketing, importation and sale of keyboards for use with Apple iPad or Apple iPad Pro 2 devices."  (Proposed Order, ECF No. 25-1).

"A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction."  Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d 145, 157 (E.D.N.Y. 2013) (quoting Kingvision Pay–Per–View Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006)).  In order to obtain a permanent injunction, a plaintiff must demonstrate:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;  (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted;  and (4) that the public interest would not be disserved by a permanent injunction.  Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010).

In this case, the relevant statute provides for injunctive relief "to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283. Thus, the only issue is whether plaintiffs have demonstrated that they satisfy the elements

required before an injunction may enter.

1. Irreparable Injury and Inadequacy of Money Damages

The irreparable injury prong and the inadequacy of money damages prong of the test are generally treated in tandem in the patent context. Kaneka Corp. v. Purestar Chem Enter. Co., 2018 WL 3215680, at *3-5 (citing Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd., 788 F. Supp. 2d 71, 76 (E.D.N.Y. 2011)). Since a finding of a patent infringement does not by itself establish irreparable harm, courts must look to the business impact of the infringement when determining whether a plaintiff has been irreparably injured. Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd., 788 F. Supp. 2d at 74. Further, "the court must . . . pay[ ] particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" Salinger v. Colting, 607 F.3d at 80. Here, plaintiffs have satisfied these factors by alleging that plaintiffs and defendant "directly compete" in the mobile and desktop device industry, and defendant's infringing conduct has caused plaintiffs to "lose actual and potential customers." (Pls.' Mem. at 11 (citing Mander-Jones Decl. ¶¶ 21-24 and 26-27)). Direct competition is a factor which "strongly" suggests the potential for irreparable harm. Presidio Components, Inc. v. Am. Technical Ceramics Corp., 702 F.3d 1351, 1363 (Fed. Cir. 2012); see also i4i Ltd Partnership v. Microsoft Corp., 598 F.3d 831, 861 (Fed. Cir. 2010) (holding that "[p]ast harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the patentee 'has suffered an irreparable injury'"). In addition to plaintiffs' unchallenged allegations that they have lost and will continue to lose customers and sales if the infringement is allowed to continue, plaintiffs have alleged that defendant's infringement was particularly devastating to their business as the Libra keyboard's appearance on Kickstarter coincided with the specifically timed and planned release of the

Brydge keyboard.  (See Mander-Jones Decl. ¶¶ 20-24 ("Companies realistically obtain only one opportunity at a product release")).  As such, the Court finds that continued infringement will likely result in lost sales and market share sufficient to show irreparable harm.  See Stein Indus., Inc. v. Jarco Indus., Inc., 934 F. Supp. 55, 58 (E.D.N.Y. 1996) (finding unrebutted claims of lost sales and market share sufficient to show irreparable injury).

Moreover, plaintiffs allege that the infringement is ongoing.  OGadget initially listed the Libra keyboard for sale on its website.  (Mander-Jones Decl. ¶ 8).  After receiving a cease and desist letter from plaintiffs, OGadget appears to have stopped listing the Libra keyboard on its website.  (Id. ¶ 9).  However, shortly after OGadget removed the Libra keyboard offering from its own website and social media sites, the same offering of the Libra keyboard appeared on the Indiegogo crowdfunding site offered by an entity calling itself "Sentis" with no further name or contact information.  (Yorio Decl. ¶ 5).  Additionally, according to plaintiffs, the Libra keyboard continues to be offered for sale on the Indiegogo website.  (Mander-Jones Decl. ¶ 25).  Since plaintiffs claim that the Libra keyboard is virtually identical to their technology and defendant has listed this keyboard for sale on multiple websites, despite cease and desist letters, plaintiffs allege that defendant OGadget continues to compete in the marketplace by offering for sale the same or substantially similar keyboards to the Brydge keyboard covered by the '527 Patent.  (Id. ¶ 26).  This conduct suggests that OGadget was and will continue to market its infringing product.  (Pls.' Mem. at 12).  It is therefore not clear that, without a direct Order, defendant's unlawful conduct will cease.  When the conduct is unlikely to cease without an injunction, monetary damages are inadequate.  See, e.g., Sexy Hair Concepts, LLC v. Sexy Hair Inc., No. 12 CV 3937, 2013 WL 5460629, at *4 (E.D.N.Y. Sept. 30, 2013); Kaneka Corp. v. Purestar Chem Enter. Co., 2018 WL 3215680, at *5 ("monetary damages are inadequate as, in the absence of

injunctive relief, there is no indication that [the defendant's] unlawful conduct – specifically infringing upon [the plaintiff's] product – will cease"). Moreover, "'because the principal value of a patent is its statutory right to exclude,' courts have concluded that monetary damages are an inadequate remedy against future infringement." Evriholder Prod. LLC v. Simply LBS Ltd. Co., No. 17 CV 4329, 2020 WL 7060336, at *12 (S.D.N.Y. Apr. 21, 2020) (citing ALAN Sportartikel GmbH v. Ultra Fitness Equip., Inc., 2011 WL 13305254, at *5 (E.D.N.Y. Feb. 10, 2011)). Accordingly, the Court finds that plaintiffs have established that they will suffer irreparable harm in the absence of a permanent injunction and that monetary relief is inadequate to compensate for such an injury.

2. Balance of Hardships

"The balance of hardships clearly tips in plaintiff's favor . . . where it has established irreparable harm[,] . . . [shown that] the infringing conduct is likely to continue absent injunctive relief[,] . . . [and] plaintiff has already incurred substantial legal costs in protecting its . . . rights." Hilton v. Int'l Perfume Palace, Inc., No. 12 CV 5074, 2013 WL 5676582, at *13 (E.D.N.Y. Oct. 17, 2013) (internal citations omitted). Here, plaintiffs have established irreparable harm and the likelihood that defendant's unlawful conduct will continue. Moreover, by bringing this case, plaintiffs have already incurred legal costs. Given defendant's failure to appear, there is no contrary evidence before this Court that would suggest that the balance of hardships tips in favor of defendant. As such, this factor weighs in plaintiffs' favor as well.

3. Public Interest

Finally, the Court must determine whether injunctive relief serves the public interest. There is a "strong public policy favoring the enforcement of patent rights." See PPG Indus., Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1567 (Fed. Cir. 1996). "[T]he touchstone of the public

interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." i4i Ltd Partnership v. Microsoft Corp, 598 F.3d at 863.  Here, "the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).  Enjoining OGadget from infringing on Brydge's technology will not result in a socially valuable technology becoming unavailable or substantially more expensive.  See Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd., 788 F. Supp. 2d at 77.  Moreover, "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." Apple Inc. v. Samsung Elecs. Co., 809 F.3d 633, 647 (Fed. Cir. 2015).  Since Brydge is currently using its patent, an injunction here serves the important goal of the patent system "in encouraging innovation." Id.  To that end, "[i]njunctions are vital to this system." Id.  Injunctive relief, then, serves the public interest as, here, it appears that any adverse impact is limited to restraining defendant's infringing activity and vindicating plaintiffs' patent rights.  As such, the Court respectfully recommends that it is in the public interest to enter a permanent injunction here.

<u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that plaintiffs' motion for default judgment be granted, and that a permanent injunction be entered against defendant OGadget, and its respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from directly or indirectly engaging in any and all acts of infringement of the U.S. Patent No. 9,069,527, including making, using, importing, selling, offering for sale, advertising, marketing, or promoting the sale of any keyboard for use with Apple iPad or Apple iPad Pro 2 devices incorporating U.S. Patent No. 9,069,527, or any

14

substantially similar keyboard sold, advertised, marketed or promoted in the United States;

assisting or cooperating with anyone else who infringes either directly or indirectly U.S. Patent

No. 9,069,527; using any photographs and/or images on defendant's websites, or on Kickstarter

or Indiegogo or any other crowdfunding site, or in any advertising, packaging, and any

marketing materials that describe, explain, show, demonstrate, or illustrate the function of any

product in a manner that suggests, induces, infers, or indicates use that constitutes an

infringement of U.S. Patent No. 9,069,527; and using any statements and images on any website,

and any advertising, packaging, and any marketing materials that describe, explain, show,

demonstrate, or illustrate the function of any product in a manner that suggests, induces, infers,

or indicates use or methods of use that constitutes an infringement of U.S. Patent No. 9,069,527,

including but not limited to, the marketing, importation and sale of keyboards for use with Apple

iPad or Apple iPad Pro 2 devices.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
        March 4, 2021

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York